UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RONALD JAMES COTY, JR.,

                    Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    15-CV-44S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.


        1.      Plaintiff Ronald James Coty, Jr. challenges an Administrative Law Judge's

("ALJ") decision dated July 1, 2013, wherein the ALJ determined that Plaintiff was not

disabled under the Social Security Act (the "Act").   Plaintiff now contends that this

determination is not based upon substantial evidence, and remand is warranted.

        2.      Plaintiff filed an application for disability insurance benefits under Title II of

the Act on November 29, 2011, alleging a disability beginning on October 5, 2010.  The

claim was initially denied on March 1, 2012.   Plaintiff thereafter requested a hearing

before an ALJ, and, on April 15, 2013, Plaintiff appeared and testified in Buffalo, NY.

The ALJ subsequently found on July 1, 2013 that Plaintiff was not disabled within the

meaning of the Social Security Act.   Plaintiff filed an administrative appeal and the

Appeals Council denied Plaintiff's request for review on November 21, 2014, rendering

the ALJ's determination the final decision of the Commissioner.  Plaintiff filed the instant

action on January 14, 2015.

        3.      Plaintiff and the Commissioner each filed a Motion for Judgment on the

Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos.

4, 6).  Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.  <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988).

4.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  <u>See</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted).   Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

5.     To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  <u>Williams on Behalf of Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ

from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.   The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.   This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.   Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this

inquiry is, in turn, divided into two parts.   First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.   Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.   See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2015.  (R. 16).[1]  He then made the following findings with regard to the five-step process set forth above:   (1) Plaintiff had not engaged in substantial gainful activity since October 5, 2010, the alleged date on which Plaintiff became disabled (id.); (2) Plaintiff's severe impairments include neuropathy in the feet and hands and dysthymia/panic disorder, as well as the non-severe impairments of status-post seminoma and metastatic testicular cancer and status-post left orchiectomy (R. 16-17); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a recognized disabling impairment under the regulations (R. 17-18); (4) Plaintiff had the residual functional capacity ("RFC") to perform light work, except that Plaintiff would need the option to switch between sitting and standing after 45 minutes, should avoid concentrated exposure to temperature extremes, could occasionally understand, remember, and carry out complex and detailed tasks, and could occasionally interact with the public, and that this RFC precluded Plaintiff from performing any past relevant work (R. 18-23); and (5) considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (R. 24).

---

[1] Citations to the underlying administrative record are designated as "R."

10.     Plaintiff advances three challenges to the ALJ's decision.  First, Plaintiff contends that the ALJ failed to fully and properly assess Plaintiff's credibility, as required under the Social Security regulations and rulings.  "The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged."  Brown v. Colvin, 47 F. Supp. 3d 180, 186 (W.D.N.Y. 2014); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999) ("Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings.")).   The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant.   Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms.   If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

Matejka v. Barnhart, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005); see 20 C.F.R. § 416.929.

"The Regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry:   (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result

of the pain." <u>Brown</u>, 47 F. Supp. 3d at 186 (citing 20 C.F.R. § 416.929(c)(3)(i)-(vii)); <u>Meadors v. Astrue</u>, 370 Fed. App'x 179, 184 n. 1 (2d Cir. 2010)). "[A]lthough an ALJ is required to consider all of the required credibility factors, he is not required to explicitly discuss each one." <u>Pratts v. Colvin</u>, No. 14-CV-6176 CJS, 2015 WL 4276331, at *11 (W.D.N.Y. July 14, 2015) (citing <u>Cichocki v. Astrue</u>, 534 Fed. App'x 71, 76 (2d Cir. 2013) ("While the ALJ did not discuss all seven factors listed in 20 C.F.R. § 416.929(c)(3), he provided specific reasons for his credibility determination[.]")).

In the present case, although the ALJ did not explicitly discuss all seven factors listed in 20 C.F.R. § 416.929(c)(3), the credibility assessment was nevertheless performed in accordance with the Second Circuit's guidance. <u>See</u> <u>Cichocki</u>, 534 F. App'x at 76. The ALJ gave in-depth discussion to the treatment records from Plaintiff's doctors, including Plaintiff's cancer diagnosis, treatment, and remission, and noted Plaintiff's testimony regarding the neuropathy that arose subsequent to his chemotherapy treatments. (R. 19-22.) The ALJ discussed Plaintiff's testimony that, despite his back pain, he had sought no treatment except pain medicine, which he does not take. (R. 22.) The ALJ further noted that although Plaintiff stated that he could sit for only 30 minutes, he often drives 50-100 miles with breaks to stop and stretch. (<u>Id.</u>) With respect to Plaintiff's failure to stop smoking, the ALJ explicitly states that he takes that into account only with respect to Plaintiff's allegations regarding shortness of breath. (R. 23.) In summary, the ALJ stated that he did not find Plaintiff's testimony and complaints to his doctors, in and of themselves, to be "consistent with a totally disabled individual," and that, although Plaintiff "may experience some degree of pain and discomfort [. . . ,] mild to moderate pain and discomfort is not, in itself, incompatible

with the performance of sustained work activity." (Id.)  In short, Plaintiff's own statements, discounted to account for certain inconsistencies, support the ALJ's RFC and the finding that Plaintiff is not completely disabled.

Plaintiff contends that the credibility assessment is faulty because it fails to take into account his significant work history.  It is true that "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983).  "Accordingly, as courts in the Second Circuit have acknowledged, an ALJ's failure to consider a claimant's work history in an evaluation of his or her credibility is contrary to the law in this circuit and the SSA's rulings." MacMillen v. Colvin, No. 14-CV-311S, 2015 WL 3823771, at *5 (W.D.N.Y. June 19, 2015) (internal quotations omitted) (citing Pena v. Barnhart, No. 01 Civ. 502, 2002 WL 31487903, at *13 (S.D.N.Y. Oct. 29, 2002) and Montes-Ruiz v. Charter, 129 F.3d 114 (Table) (2d Cir. 1997)).  "But failing to mention work history will not, in itself, constitute reversible error when the ALJ's credibility assessment is based on objective medical evidence of a lack of a disability." Id.  In other words, a good work history alone does not substitute for medical evidence of disability.  See Johnson v. Astrue, No. 07-CV-0322C, 2009 WL 3491300, at *7 (W.D.N.Y. Oct. 23, 2009); see also Campbell v. Astrue, 465 F. App'x 4, 7 (2d Cir. 2012) ("Although it is true that a good work history may be deemed probative of credibility, it remains just one of many factors appropriately considered in assessing credibility.") (internal quotation omitted).  Accordingly, because Plaintiff's own testimony does not suggest that he is totally disabled, and because the ALJ's credibility assessment "includes precise reasoning, is supported by evidence in the case record, and clearly

indicates the weight the ALJ gave to the claimant's statements and the reasons for that weight," there is no basis for remand.  Finney ex rel. B.R. v. Colvin, No. 13-CV-00543-A, 2014 WL 3866452, at *11 (W.D.N.Y. Aug. 6, 2014).

11.    Second, Plaintiff contends that the ALJ erred in failing to consider Plaintiff's injuries to his neck and lower back as "severe impairments" at step two of the five-step analysis.    A "severe impairment" is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities," including understanding and carrying out simple instructions and responding appropriately to others in usual work situations.  20 C.F.R. § 404.1520(c); § 404.1521.    Assuming that Plaintiff's neck and back injuries are, in fact, severe impairments, the ALJ's failure to separately evaluate them as such at step two does not necessarily render the decision erroneous.  See Buck v. Colvin, No. 14-CV-216S, 2015 WL 4112470, at *4 (W.D.N.Y. July 8, 2015).

An ALJ is required to explicitly identify all impairments supported by substantial evidence at step two, in order to avoid "prejudic[ing] the claimant at later steps in the sequential evaluation process."    Lowe v. Colvin, No. 6:15-CV-06077(MAT), 2016 WL 624922, at *3 (W.D.N.Y. Feb. 17, 2016) (internal quotation omitted).  "Any error in failing to identify a severe impairment, however, is harmless if that impairment is specifically considered during the subsequent steps."  Morales v. Colvin, No. 13-CV-550S, 2014 WL 4829351, at *4 (W.D.N.Y. Sept. 29, 2014) (citing Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (finding an alleged step two error harmless because the ALJ considered the impairments found non-severe during subsequent steps)); see also Diakogiannis v. Astrue, 975 F. Supp. 2d 299, 311-12 (W.D.N.Y. 2013) ("[a]s a general

matter, an error in an ALJ's severity assessment with regard to a given impairment is harmless when it is clear that the ALJ considered the claimant's impairments and their effect on his or her ability to work during the balance of the sequential evaluation process") (internal quotations and punctuation omitted).

Although the ALJ did not identify the neck and back injuries as severe impairment at step two, he does consider them throughout the remainder of the assessment.   They are specifically addressed at step four, both as part of Plaintiff's allegations (R. 18), and throughout the ALJ's summary of the treatment records (R. 19-22).   Indeed, the ALJ's RFC assessment makes numerous references to Plaintiff's complaints of back and neck pain, including:   Plaintiff's complaints of back and neck pain caused by stress on June 2, 2010 (R. 19); low back pain, which Plaintiff stated was a "4/10" during his examination by Dr. Donna Miller on February 12, 2012, and which he stated he had been experiencing, together with neck pain, for 20 years (R. 21); and Dr. Gordon C. Steinagle's examination and statement that Plaintiff's cervical spine range of motion was decreased and straight leg raise was positive on both legs (id.).   And finally, the RFC itself accounts for any neck and back impairments by limiting Plaintiff to light work with the ability to alternate sitting and standing every 45 minutes.  (R. 18.)

Because the ALJ already took the medical evidence of Plaintiff's back and neck pain into consideration when crafting the RFC, reviewing the record again would be unlikely to change his determination.  Zabala v. Astrue, 595 F.3d 402 (2d Cir. 2010) (remand is not necessary when there is no reasonable likelihood that an ALJ's examination of the same evidence would change the RFC determination); see generally Housser v. Colvin, No. 13-CV-1133-JTC, 2015 WL 162985, at *1 (W.D.N.Y. Jan. 13,

2015) (ALJ properly found that plaintiff with severe impairments including back and neck pain had RFC to perform light work with certain limitations).  Accordingly, any error in not listing the neck and back injuries as a severe impairment at step two was harmless. Wells v. Colvin, No. 14-CV-197-JTC, 2015 WL 1280536, at *7 (W.D.N.Y. Mar. 20, 2015) ("Where the record establishes the presence of multiple impairments, and the ALJ finds at step two that some impairments (but not others) are severe, thereby allowing plaintiff's claim to proceed through the sequential evaluation process, any error in the ALJ's severity analysis must be considered harmless.").

12.    Finally, Plaintiff contends that the ALJ erred by rejecting portions of the medical opinions from Dr. Ellis Levine, Plaintiff's treating oncologist, and Dr. Steinagle, an independent medical examiner, when assessing Plaintiff's RFC.  An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996)).  Here, after considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work with certain limitations.  Specifically, Plaintiff would need the option to switch between sitting and standing after 45 minutes, should avoid concentrated exposure to temperature extremes, could occasionally understand, remember, and carry out complex and detailed tasks, and could occasionally interact with the public.  (R. 18.) Plaintiff asserts that, although the ALJ afforded "great weight" to the portion of Dr. Levine's opinion stating that he could not "justify complete permanent disability" for Plaintiff, the ALJ failed to sufficiently incorporate Dr. Levine's additional statements that Plaintiff should ask his employer whether there is a position available "that does not

require him to be on his feet for extended periods of time, or if he could at least work part-time." (R. 334.) Plaintiff further challenges the ALJ's assertion that Dr. Steinagle's opinion, finding that Plaintiff could not return to his prior employment doing manual labor, "is consistent with the [ALJ's] residual functional capacity found herein." (R. 21.)

Plaintiff fails to demonstrate how either opinion is inconsistent with the ALJ's RFC. As an initial matter, Dr. Levine's opinion was given less than one month after Plaintiff's surgery to remove a testicle, and contemplates Plaintiff's diagnosis improving over time. (R. 334.) That contemplation is borne out by later records from Dr. Levine's office, which found Plaintiff to have Eastern Cooperative Oncology Group ("ECOG")[2] and Karnofsky[3] scores consistent with an individual experiencing only minor symptom of disease and with ability to carry on normal daily activity, including light work. (See, e.g., R. 342 (Dr. Levine's finding of a "0" ECOG score five months post-surgery).) In addition, the determination that Plaintiff is limited to jobs where he can alternate sitting and standing accounts for Dr. Levine's opinion on Plaintiff's limitation for standing. And with respect to Dr. Levine's recommendation that Plaintiff seek part-time work with his former employer, and Dr. Steinagle's opinion that Plaintiff could no longer perform his prior work, these both appear to refer only to Plaintiff's ability to perform his former job:

---

[2] "The ECOG Scale of Performance Status . . . describes a patient's level of functioning in terms of their ability to care for themself, daily activity, and physical ability (walking, working, etc.)." ECOG Performance Status, http://ecog-acrin.org/resources/ecog-performance-status (last visited March 24, 2016). A score of "0" indicates a patient who is "[f]ully active, able to carry on all pre-disease performance without restriction;" a score of "1" indicates a patient who is "[r]estricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature, e.g., light house work, office work." Id. Plaintiff consistently scored as 0 on the ECOG scale. (R. 342, 414, 422, 483, 487.)

[3] The Karnofsky Performance Scale is an assessment tool to evaluate "the more 'subjective' side of the outcome of cancer treatment" on a scale from 0 to 100%, where: 100% corresponds to "Normal health;" 90% corresponds to "Minor symptoms;" 80% corresponds to "Normal activity with some effort;" and 70% corresponds to "Unable to carry on normal activity but able to care for oneself." Karnofsky Scale, SEER Training Modules, National Cancer Institute, http://training.seer.cancer.gov/followup/procedures/dataset/karnofsky.html (last visited March 24, 2016). Plaintiff consistently scored 90% on the Karnofsky scale. (R. 414, 421, 483, 487.)

namely, manual labor.  The ALJ's RFC, which sets out a determination that Plaintiff can perform light work with a number of restrictions, is therefore fully consistent with these opinions.

Nevertheless, to the extent that the RFC does "not perfectly correspond" with any one of the medical opinions, the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." <u>Matta v. Astrue</u>, 508 Fed. App'x 53, 56 (2d Cir. 2013).  The ALJ thoroughly discussed and considered Plaintiff's treatment history, his statements concerning symptoms and daily activities, the lack of objective medical evidence indicating disability, as well as the medical opinions of Drs. Levine, Miller, and Steinagle regarding Plaintiff's limitations, and incorporated them into the RFC.  (R. 18-23.)  Accordingly, this Court finds that the RFC is consistent with the record as a whole.  <u>See</u> <u>Snyder v. Colvin</u>, No. 1:15-CV-00359 (MAT), 2016 WL 1028237, at *3 (W.D.N.Y. Mar. 15, 2016) (citing <u>Matta</u>, 508 Fed. App'x at 56, and finding that RFC assessment was consistent with the record as a whole where RFC did not directly follow any individual opinion and ALJ gave less weight to opinion that was time-limited).

13.    For the foregoing reasons, and upon a review of the record as a whole, this Court concludes that the ALJ's determination is supported by substantial evidence.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 4) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED;

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:  March 29, 2016
        Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge